UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT A. KENDRICKS, SR.,

    Petitioner,

v.                                          Case No.  8:06-cv-2159-T-24EAJ

SECRETARY, DEPARTMENT OF CORRECTIONS,

    Respondent.

_____

## **ORDER**

This cause is before the Court on Robert Kendricks' 28 U.S.C. § 2254 petition for writ of habeas corpus.  Kendricks challenges his conviction and sentence entered by the Circuit Court for the Sixth Judicial Circuit, Pasco County, Florida.  A review of the record demonstrates that, for the following reasons, Kendricks' petition must be **denied.**

### Procedural History

On December 9, 1999, Kendricks was charged by an amended felony information with capital sexual battery on a child under the age of 12 in violation of section 794.011(2)(a), Florida Statutes (2000) in case no. 99-2635CFAWS.[1]

### Motion To Suppress

On December 20, 1999, Kendricks filed a motion to suppress any statements Kendricks made to law enforcement officers on August 2 and 3, 1999 relative to case

---

[1] Kendricks pled guilty to attempted capital sexual battery in companion case 99-2637CFAWS. That conviction and subsequent appeal in case no. 2D04-95 is not the subject of this petition.

no. 99-2635CFAWS. (Exhibit 1, R 10-11, 18-19). After a hearing on the motion to suppress, the state trial court, on June 5, 2000, denied the motion to suppress, stating:

> THIS CAUSE coming on to be heard upon the defendant's Motion To Suppress Statements and the Court having received testimony and the parties having been heard, and the defendant seeking to suppress statements made at his home without having been advised of his rights under Miranda v. Arizona as well as seeking to suppress statements made at the Pasco County Sheriff's Office after having been advised of his rights under Miranda v. Arizona, the following findings of fact are made:
>
> 1. Several uniformed Pasco County Sheriff's Office deputies arrived in the area of the defendant's home due to a complaint that the defendant had committed involuntary sexual batteries on several juveniles who were related to the defendant. The officers determined that the defendant and the relative victims and their parents lived in close proximity to one another and when the deputies responded at approximately 7:30 p.m. on 8/2/99 they encountered several adult relatives of the defendant in the streets around the defendant's house including the parents of the alleged victims as well as the defendant's wife who were angry and upset at the defendant concerning the allegations of sexual battery. The uniformed deputies in an effort to maintain order and to conduct the investigation, requested that the irate relatives return to their homes to which request there was some element of compliance. Relatives who testified at the hearing on the Motion To Suppress essentially confirmed the deputy's version of events and confirmed that no individual or relative was prevented from having contact with the defendant but rather confirmed that they were told to avoid contact due to the potentially volatile situation in the neighborhood.
>
> 2. The alleged juvenile victims were interviewed at the Pasco County Sheriff's Office by the investigating case detective, Detective Bill Davis, between approximately 8:00 p.m. and midnight on 8/2/99. Detective Davis furnished the opinion that he did not have probable cause to arrest the defendant at the conclusion of those statements despite the fact that allegations of involuntary sexual battery came from multiple juvenile relatives of the defendant due to the

        fact that the alleged victims had previously made allegations which they had recanted.

3. Relatives of the defendant including his mother, father and brother described at the hearing on the Motion To Suppress, contact with the defendant during the evening hours of 8/2/99 and described the defendant as staggering and grossly intoxicated to the point that he was falling down drunk. The Court finds that their credibility is seriously deficient in that despite describing the defendant's gross level of intoxication they all simply left him alone in the house with no care giver and a plentiful supply of beer and prescribed narcotic medication. The relatives [sic] description of the defendant approaching a near death level of intoxication is further at odds with the defendant's appearance and conduct in the videotaped statement taken a short time later at the Pasco County Sheriff's Office. Accordingly, the relatives [sic] description of the defendant's level of intoxication has been given little weight by this Court.

4. Detective Bill Davis, despite his assertion that he did not possess probable cause for the defendant's arrest after receiving the incriminating statements from the juvenile victims, did view the defendant as a suspect and at approximately midnight on 8/2/99 he, in the company of two uniformed officers, contacted the defendant at the defendant's house. Detective Davis in company with the two uniformed officers, after identifying themselves to the defendant, were admitted entrance into the defendant's home and the detective proceeded to advise the defendant as to the multiple incriminating statements made about him by the juvenile relative victims. The defendant was not advised of his rights under <u>Miranda v. Arizona</u> at this time due to Detective Davis' assertion that the defendant was not in custody and that the detective did not know where this investigation was going. The defendant was not handcuffed at his home and was permitted to smoke and there was no effort to prevent the defendant from leaving although the defendant never attempted to leave his home. The defendant conceded at hearing that he was not prevented by any of the officers from leaving his home. The credible testimony from Detective Davis and the uniformed officers is that while the defendant had

> consumed an alcoholic beverage that he was not intoxicated and although he had some difficulty walking due to an injury to his foot, that there was no indication that his normal faculties were impaired by alcohol or any prescription medication. The defendant initially denied any culpability but over the course of an approximately thirty minute interview, the defendant stated, "I didn't mean to hurt her."

5. Detective Davis requested that the interview be continued at the Sheriff's Office when the defendant made the aforesaid statement and upon the defendant's agreement drove the defendant to the Pasco County Sheriff's Office. The defendant conceded at hearing on the Motion To Suppress that in fact he was never handcuffed during this contact with the detective and that he did in fact agree to go with the detective to the Sheriff's Office.

6. The defendant's entire contact with law enforcement at the Pasco County Sheriff's Office was videotaped and at the onset the defendant was advised of his rights under Miranda v. Arizona. The defendant appears on videotape to be rational and coherent and although there does appear to be some evidence that he had consumed alcohol, there does not appear to be evidence that any of his faculties were impaired. Detective Davis furnished the opinion that in fact the defendant was not intoxicated either in his contact with him at the defendant's home or at the Pasco County Sheriff's Office. The defendant after being advised of his rights under Miranda v. Arizona confirmed that he had come with the detective of his own free will to the Sheriff's Office and stated that he would rather not talk about the accusations but rather just admit them. The defendant further advised that his motivation was that he was embarrassed for his family and that he feared for his own safety in the jail. The defendant [sic] responsive and coherent appearance on the videotape at the Sheriff's Office is further buttressed by the defendants [sic] concession at hearing on the Motion To Suppress that he had no difficulty in communicating with the officer at the Sheriff's Office.

The defendant has cited the case of Ramirez v. State, 739 So. 2d 568, Supreme Court of Florida 1999 (in support of his contention that the

defendant was in custody in his home and thus should have been properly advised of his rights under Miranda v. Arizona). The Supreme Court in Ramirez v. State cites with approval the Iowa Supreme Court's "four factor test" in determining whether a reasonable person would consider himself in custody. The defendant initially was questioned in his home after allowing entry by law enforcement; was never prevented from leaving the home; was allowed to smoke cigarettes; was advised not only of the identity and the purpose of the visit by law enforcement but also was advised of the accusations by the juvenile victims against him. Furthermore, the defendant while he had apparently consumed some alcohol was not intoxicated and hence had the ability to terminate the interview if he chose to do so. Accordingly, considering the totality of the circumstances of the defendant's interview in his home, he clearly was not in custody for purposes of Miranda.

The statement that the defendant made at his home in which he stated that he didn't mean to hurt her triggered Detective Davis' decision to continue the interview under circumstances which would allow it to be videotaped at the Pasco County Sheriff's Office. Although the defendant was transported to the Sheriff's Office by the detective, the evidence including the defendant's own statement at the hearing on the Motion To Suppress was that he voluntarily accompanied the detective to the Sheriff's Office after fully understanding the nature of the investigation and the extent of the juvenile victims [sic] accusations against him. The defendant was advised of his rights under Miranda as soon as he arrived at the Sheriff's Office and his motivation for his further statements at the Sheriff's Office post Miranda were that he was embarrassed due to his conduct in committing the sexual batteries upon his juvenile relatives. The defendant's statements at the Pasco County Sheriff's office were therefore freely and voluntarily made as well as his agreement to be brought to the Pasco County Sheriff's Office for questioning.

It is therefore ORDERED AND ADJUDGED that defendant's Motion To Suppress Statements is denied.

(Exhibit 1, R 28-30).

### Jury Trial

Kendricks proceeded to jury trial in February 2001. The jury found Kendricks guilty as charged. On February 9, 2001, the state trial court sentenced Kendricks to life

imprisonment. Kendricks appealed. The first issue Kendricks raised on direct appeal was

> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN NOT SUPPRESSING THE APPELLANT'S STATEMENTS TO LAW ENFORCEMENT AND ALLOWING SEVERAL STATE WITNESSES TO TESTIFY REGARDING SAME BEFORE THE JURY.

The second district court of appeal per curiam affirmed Kendricks' conviction and sentence on May 3, 2002. *Kendricks v. State*, 819 So. 2d 766 (Fla. 2d DCA 2002)(table). The mandate issued on June 4, 2002. (See Exhibit No. 5).

Kendricks filed a Rule 3.850 motion for postconviction relief on July 17, 2002.(See Exhibit No. 6: 2DCA file 2D06-2088: Motion for Post Conviction Relief). The state trial court denied postconviction relief, and Kendricks appealed. On September 15, 2006, the state district court of appeal per curiam affirmed the denial of postconviction relief. *Kendricks v. State*, 939 So. 2d 103 (Fla. 2d DCA 2006)(table). (See Exhibit No. 7). The mandate issued October 6, 2006. (See Exhibit No. 8: Second District docket sheet). Kendricks timely filed the present federal petition for writ of habeas corpus on November 16, 2006.

### AEDPA Standard of Review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court

of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Discussion

Kendricks raises one ground for relief in the present petition:

PETITIONER WAS DEPRIVED OF HIS PRIVILEGE AGAINST SELF INCRIMINATION WHICH IS GUARANTEED UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

In support, Kendricks claims that he was

> subjected to a two-step police interrogation where he was not advised of his Miranda rights initially and made inculpatory statements that were the basis for the post-warned statements obtained after waiving his rights in the videotaped second step of his interrogation.

(Petition, p. 6).

Kendricks alleges that his Fifth Amendment rights against self-incrimination were violated since he was not given sufficient *Miranda* warnings, and that his confession was involuntary.[2] Kendricks had a full and fair opportunity to litigate his claim before the Florida courts.

Kendricks' claim is facially and legally insufficient to make the threshold showing required under §2254(d). The state court decision was a reasonable application of

---

[2] *Miranda* safeguards a fundamental trial right by protecting a defendant's Fifth Amendment privilege against self-incrimination. Moreover, *Miranda* facilitates the correct ascertainment of guilt by guarding against the use of unreliable statements at trial. *Withrow v. Williams*, 507 U.S. 680 (1993).

established federal law in light of the state record, and Kendricks does not overcome the presumption of correctness of the state court's factual findings. §2254(e)(1) for the following reasons.

Kendricks was not in custody during the initial questioning. Therefore he was not immediately given *Miranda* warnings and no such warnings were required. *Roman v. State*, 475 So. 2d 1228 (Fla. 1985). He was not handcuffed in his home and was permitted to smoke. The police made no effort to prevent him from leaving. Moreover, Detective Davis testified that Kendricks was not intoxicated. There was no indication that his faculties were impaired. (Exhibit No. 1: V. 1: R. 28). Kendricks was then asked to be interviewed at the Sheriff's Office, which he agreed to do. (Exhibit No. 1: V. 1: R. 28).

On the videotape made at the Sheriff's Office, Kendricks appeared rational and coherent. After being read his *Miranda* rights, Kendricks admitted going to the Sheriff's Office of his own free will. He further admitted at the suppression hearing that he had no difficulty communicating with the officers at the Sheriff's Office. (Exhibit No. 1: V. 1: R. 29).

Deputy Maseda testified that Kendricks was not threatened in any way. (Exhibit No. 1: V. 2: R. 294-295). The deputy did not attempt to block anyone's entrance into the house and at no point was the home "cordoned off." (Exhibit No. 1: V. 2: R. 296). Detective Davis testified he interviewed Kendricks at his residence. (Exhibit No. 1: V. 2: R. 317). Kendricks agreed to speak with the detective. The detective asked Kendricks if he would come to the police station to talk, and Kendricks agreed. (Exhibit

No. 1: V. 2: R. 326). Once at the Sheriff's Office, Kendricks was read his *Miranda* rights which he voluntarily waived. (Exhibit No. 1: V. 2: R. 327-328).

This interview was videotaped. The videotape was played at the motion to suppress hearing, and it was clear that Kendricks was read and waived his *Miranda* rights before he began the interview at the Sheriff's Office. (Exhibit No. 1: V. 2: R. 332). On the videotape, Kendricks admitted putting J's hand on his penis, rubbing his penis against her and fingering her. (Exhibit No. 1: V. 2: R. 336-337). He also remembered fingering D. He then admitted that this sexual abuse occurred years before, and that the only recent sexual abuse involved J. M. Kendricks admitted sucking J.M.'s penis and grabbing his "behind." (Exhibit No. 1: V. 2: R. 339).

Prior to being read his *Miranda* rights, Kendricks was free to leave the Sheriff's Office. (Exhibit No. 1: V. 2: R. 346). The United States Supreme Court has expressly recognized that the failure to administer *Miranda* warnings initially does not taint all subsequent statements. In *Oregon v. Elstad*, 470 U.S. 298, 310-11 (1985), the Court held that if "careful and thorough administration" of the warnings are later given, and constitutional rights are thereafter waived, any further statements may properly be used against the defendant.

The facts of the present case fit within this principle; Kendricks' rights were explained to him and he voluntarily waived his *Miranda* rights before he made the statements that were admitted into evidence. Thus, no error was demonstrated in the denial of Kendricks' motion to suppress. *See also Davis v. State*, 698 So. 2d 1182, 1187-89 (Fla. 1997) (although untaped statement, provided in the absence of *Miranda*

warnings, should have been excluded, the second, taped statement was properly admitted). "Though Miranda requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." 470 U.S. at 309.

Finally, Kendricks' case is distinguishable from *Missouri v. Seibert*, 542 U.S. 600 (2004) upon which Kendricks relies to support his claim. In *Seibert, Miranda* rights were not given until 20 minutes after the police elicited a confession. The Court disapproved of the "question first" doctrine employed because it effectively thwarted the purpose of *Miranda*.

That situation did not occur in Kendricks' case because questioning ceased when Kendricks initially began to discuss potentially incriminating statements. Kendricks later made a knowing and voluntary waiver of his *Miranda* rights before he was questioned and before he confessed at the Sheriff's Office. Moreover, Kendricks' conviction became final prior to the release of *Seibert* which is not retroactive. *Seibert* is an application of the *Miranda* decision, not the establishment of a fundamental constitutional right which has been held to apply retroactively. *See Young v. State*, 942 So. 2d 980 (Fla. 4th DCA 2006) Fla. R. Crim. P. 3.850(b)(2).

**Accordingly, the Court orders:**

That Kendricks' petition is denied. The Clerk is directed to enter judgment against Kendricks and to close this case.

**CERTIFICATE OF APPEALABILITY AND**
**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 22, 2008.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Robert A. Kendricks